Che Corrington, OSB No. 216151
Email: che@hattislaw.com
Daniel M. Hattis (admitted *pro hac vice*)
Email: dan@hattislaw.com
HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

Stephen P. DeNittis (*pro hac vice* to be submitted)
Email: sdenittis@denittislaw.com
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951

*Attorneys for Plaintiffs*
*and the Proposed Class*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KARA KIRKPATRICK,<br>GILLIAN MAXFIELD,<br>ANNA DEMARCO, and<br>CODY MICHAEL,<br>for themselves and<br>on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SIRIUS XM RADIO LLC,<br><br>Defendant. | Case No. 3:24-cv-00955-SI<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS


INTRODUCTION ..... 1

PROCEDURAL HISTORY ..... 3

ARGUMENT ..... 4

I. PLAINTIFFS' UTPA CLAIM IS TIMELY UNDER THE DISCOVERY RULE ..... 4

A. Plaintiffs Have Met Their Burden Of Pleading Facts Which Show They Are Entitled To The Benefit Of The Discovery Rule. ..... 6

1. Plaintiffs Have Described The Time And Manner Of Their Discovery Of Sirius XM's Unlawful Conduct. ..... 6

2. Plaintiffs Have Explained Why They Could Not Have Discovered Sirius XM's Unlawful Conduct Sooner. ..... 9

B. Plaintiffs Lacked Sufficient Knowledge That Would Prompt A Reasonable Person To Conduct An Investigation. ..... 10

C. Sirius XM Has Failed To Present Evidence Proving That A Reasonable Investigation Would Have Revealed Its Unlawful Conduct. ..... 13

D. Public Policy Favors Applying The Discovery Rule. ..... 15

II. SIRIUS XM'S MOTION IS A THINLY DISGUISED MOTION FOR SUMMARY JUDGMENT. ..... 15

III. PLAINTIFFS HAVE ALLEGED A VALID CLAIM UNDER THE UTPA. ..... 17

A. Plaintiffs Have Sufficiently Alleged The Three Required Elements Of A UTPA Claim. ..... 17

B. Sirius XM's Arguments Are Meritless. ..... 21

1. Sirius XM's "All-In" Argument Improperly Relies On Unalleged Facts And Inapplicable Law. ..... 22

2. Plaintiffs Have Alleged Numerous Deceptive Representations, Omissions, And Practices By Sirius XM, Each Of Which Is Likely To Mislead The Reasonable Consumer. ..... 24

3. The Reasonable Consumer Test Is An Issue Of Fact, To The Extent It Applies At All. ..... 27

C. Sirius XM's Attempt To Distinguish *Carovillano* Misses The Mark. ..... 28

IV. PLAINTIFFS HAVE ALLEGED A VALID CLAIM UNDER THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ..... 30

V. PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS ARE NOT MOOT ..... 33

CONCLUSION ..... 35




**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## TABLE OF AUTHORITIES

### CASES

*Am. Diabetes Ass'n v. U.S. Dep't of the Army,*
938 F.3d 1147 (9th Cir. 2019) .................................................. 34

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................. 15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................. 15

*Best v. U.S. Nat. Bank of Oregon,*
303 Or. 557 (1987) .................................................. 31

*Bodin v. B. & L. Furniture Co.,*
42 Or. App. 731 (1979) .................................................. 6

*Bodunov v. Kutsev,*
214 Or. App. 356 (2007) .................................................. 5, 6

*Bohr v. Tillamook County Creamery Ass'n,*
373 Or. 343 (2025) .................................................. 18, 20, 28

*Campanelli v. Bockrath,*
100 F.3d 1476 (9th Cir. 1996) .................................................. 16, 22, 30

*Carovillano v. Sirius XM Radio Inc.,*
715 F. Supp. 3d 562 (S.D.N.Y. 2024) .................................................. 28, 29

*Clark v. Eddie Bauer LLC,*
371 Or. 177 (2023) .................................................. 20, 23, 25, 27

*Clark v. Eddie Bauer LLC,*
No. 2:20-CV-01106-RAJ,
--- F. Supp. 3d ----, 2025 WL 814924 (W.D. Wash. Mar. 12, 2025) .................................................. 6

*De Jaray v. Lattice Semiconductor Corp.,*
No. 3:19-CV-86-SI,
2022 WL 4087788 (D. Or. Sept. 6, 2022) .................................................. 6

*DeSoto v. Yellow Freight Sys., Inc.,*
957 F.2d 655 (9th Cir. 1992) .................................................. 4

*Doe 1 v. Lake Oswego Sch. Dist.,*
353 Or. 321 (2013) .................................................. 6



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

*Easterbrook v. LinkedIn Corp.*,
No. 6:22-CV-01108-MC,
2023 WL 3022497 (D. Or. Apr. 20, 2023) ........ 12

*Esgate v. Home Depot U.S.A., Inc.*,
No. 6:24-CV-01806-MTK,
2025 WL 1207217 (D. Or. Apr. 24, 2025) ........ 6

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........ 34

*Guirma v. O'Brien*,
259 Or. App. 778 (2013) ........ 6

*Harper v. Charter Commc'ns, LLC*,
No. 219CV00902WBSDMC,
2021 WL 603724 (E.D. Cal. Feb. 16, 2021) ........ 7, 8

*Johnson v. Multnomah Cnty. Dep't of Cmty. Just.*,
344 Or. 111 (2008) ........ 5

*Kaseberg v. Davis Wright Tremaine, LLP*,
351 Or. 270 (2011) ........ 4, 5, 6

*Keithly v. Intelius*,
764 F. Supp. 2d 1257 (W.D. Wash. 2011) ........ 23, 25

*Keller v. Armstrong World Indus., Inc.*,
342 Or. 23 (2006) ........ 4, 6, 14

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005) ........ 16

*Lowry v. Univ. of Oregon Med. Sch.*,
No. 3:16-CV-01049-YY,
2018 WL 5780849 (D. Or. Sept. 28, 2018) ........ 6

*MacQuaid v. New York Times Co.*,
No. 3:22-CV-00955-MO,
2023 WL 2633359 (D. Or. Mar. 24, 2023) ........ 12

*Martell v. Gen. Motors LLC*,
492 F. Supp. 3d 1131 (D. Or. 2020) ........ 6

*Mathies v. Hoeck*,
284 Or. 539 (1978) ........ 5, 10, 13



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

*Mendoza v. Lithia Motors, Inc.*,
2017 WL 125018 (D. Or. Jan. 11, 2017) ............ 5, 6

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ............ 16

*Olson v. Grant Cnty.*,
No. 2:20-CV-01342-SU,
2021 WL 646055 (D. Or. Jan. 26, 2021) ............ 6

*Peterson v. Kitsap Community Federal Credit Union*,
171 Wash. App. 404 (2012) ............ 23, 25

*Russell v. Ray Klein, Inc.*,
No. 1:19-CV-00001-MC,
2021 WL 1895238 (D. Or. May 10, 2021) ............ 6

*Salem Sand & Gravel Co. v. City of Salem*,
260 Or. 630 (1971) ............ 4, 6

*Sepanossian v. National Ready Mixed Concrete Co.*,
97 Cal. App. 5th 192 (2023) ............ 24

*Silva v. Unique Beverage Co., LLC*,
No. 3:17-CV-00391-HZ,
2017 WL 4896097 (D. Or. Oct. 30, 2017) ............ 27

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ............ 16

*Sturgis v. Asset Acceptance, LLC*,
No. 3:15–cv–00122–AC,
2016 WL 223708 (D. Or. 2016) ............ 4, 6

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) ............ 6

*T.R. v. Boy Scouts of Am.*,
344 Or. 282 (2008) ............ 5, 13, 15

*Tillage v. Comcast Corp.*,
2021 WL 3417940 (N.D. Cal. July 16, 2021) ............ 29

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ............ 16, 35

*Usher v. City of Los Angeles*,
828 F.2d 556 (9th Cir. 1987) ............ 16



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

*Vitort v. Kroger Co.*,
No. 22-35185,
2023 WL 3143690 (9th Cir. Apr. 28, 2023) .......... 23, 24

*Watts v. Jackson Hewitt Tax Service Inc.*,
579 F. Supp. 2d 334 (E.D.N.Y. 2008) .......... 17

*Wayne v. Staples, Inc.*,
135 Cal. App. 4th 466 (2006) .......... 23

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) .......... 27

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*,
135 F.3d 658 (9th Cir. 1998) .......... 16, 22

**STATUTES**

ORS 646.636 .......... 33

ORS 646.638 .......... 4, 7



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## INTRODUCTION

This is a putative class action that challenges a deceptive pricing scheme whereby Defendant Sirius XM Radio LLC ("Sirius XM") falsely advertises its satellite radio music plans at lower prices than it actually charges. Sirius XM does this by systematically failing to include in its advertised prices the existence or amount of its invented "U.S. Music Royalty Fee," which increases the true prices of its music plans by ***21.4%*** *above and beyond* the advertised prices. Plaintiffs' First Amended Complaint ("FAC") ¶ 1 (Dkt. 24).[1] Sirius XM intentionally fails to identify either the "U.S. Music Royalty Fee" or its resultant 21.4% price increase in *any* advertising (not even in the fine print) or at *any time* to potential customers prior to or during sign-up. FAC ¶ 2; *see also* FAC ¶¶ 33–55 (Sirius XM fails to disclose in mailers, emails, website, or telephone sign-ups).

Once customers have been lured to sign up via advertised, low "promotional" rates—which, again, wholly omit the 21.4% U.S. Music Royalty Fee—Sirius XM prevents them from learning about the Fee or Sirius XM's scheme to profit thereby by never sending them regular billing notices or invoices. FAC ¶¶ 3, 19, 56–60. All the while, Sirius XM silently and automatically renews their subscriptions month after month and year after year. FAC ¶ 3. And, as the price of its subscribers' music plans increases—e.g., when a promotional rate expires—the U.S. Music Royalty Fee amount, being a flat 21.4% charge, also increases.

Thus, Plaintiffs' FAC alleges not only that Sirius XM falsely advertised the prices of its music plans to its customers, including Plaintiffs and Class members, but also that it *never* adequately disclosed to them either the 21.4% U.S. Music Royalty Fee or its amount. Meanwhile, Sirius XM's sign-up process, automatic renewal process, and policy of not sending periodic billing notices or invoices are all deliberately designed to prevent subscribers from learning of the 21.4% U.S. Music Royalty Fee. *See* FAC ¶¶ 18–66 (detailed allegations of Sirius XM's false advertising scheme).

---

[1] All references to the First Amended Complaint or FAC are to the corrected version filed on March 3, 2025 (Dkt. 24), not to the earlier version filed on Feb. 28, 2025 (Dkt. 23).



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Plaintiffs' FAC also alleges that Sirius XM furthered its scheme by misrepresenting the true nature of the 21.4% U.S. Music Royalty Fee, falsely describing it as a government-related or "pass-through" charge which was not kept by Sirius XM as profit. FAC ¶ 5, 31, 51, 64–65. Indeed, if a customer happened to notice the Fee and contacted Sirius XM to inquire about it, Sirius XM had a uniform policy of outright falsely telling the customer that the Fee was "government mandated" or was a government pass-through fee. FAC ¶¶ 5, 61–63, 166–67. Additionally, on Sirius XM's website, buried disclaimers falsely indicated that the Fee was a pass-through of a legitimate government charge from "Congress" that "Sirius XM is required by law to pay." FAC ¶¶ 5, 64, 168. Sirius XM even gave the Fee a misleading name to further its deceptive scheme, calling it a "U.S." Fee to falsely indicate to subscribers that it was a government pass-through fee, when in fact it was not. FAC ¶¶ 5, 65, 169.

None of Sirius XM's competitors charges any separate royalty fee over and above their advertised music plan prices. FAC ¶¶ 4, 30, 162. Indeed, reasonable consumers would expect that the advertised prices for Sirius XM's music plans include the costs of obtaining the permissions necessary to provide the advertised music content, and that they would not have to pay a separate 21.4% Fee to cover such costs. FAC ¶¶ 4, 30, 52, 162. In fact, Sirius XM's 21.4% U.S. Music Royalty Fee is simply a disguised double-charge for the music plan itself, creating an additional (and significant) profit for Sirius XM. FAC ¶¶ 4, 30, 52.

Sirius XM's U.S. Music Royalty Fee scheme has been the source of a large portion of Sirius XM's profits for many years. FAC ¶¶ 6, 28. For example, in 2023, Sirius XM collected **$1.36 billion** in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.26 billion. *Id*. In other words, in 2023, the deceptive U.S. Music Royalty Fee comprised ***108%*** *of Sirius XM's net profits*. *Id.* Additionally, the amounts that Sirius XM collected in U.S. Music Royalty Fees was greater than the amounts Sirius XM actually paid out in music royalties, thus confirming the Fee's status as a true profit center and not a pass-through. *Id*.

Sirius XM charges its 21.4% U.S. Music Royalty Fee to nearly all of its 431,000 Oregon customers, accounting for over $17 million in annual charges. FAC ¶¶ 7, 32. Since Sirius XM invented and introduced the Fee in 2009, Plaintiffs estimate that Sirius XM has



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

unlawfully extracted over $130 million from Oregon consumers in U.S. Music Royalty Fee charges. FAC ¶¶ 7, 32.

Plaintiffs Kara Kirkpatrick, Gillian Maxfield, Anna DeMarco, and Cody Michael (collectively, "Plaintiffs") bring claims on behalf of themselves and a class of Oregon Sirius XM music plan customers, seeking statutory damages or actual damages, whichever is greater, for Sirius XM's violations of the Oregon Unlawful Trade Practices Act ("UTPA"), ORS 646.605 *et seq*. *See* FAC ¶ 158 (class definition).[2] FAC ¶¶ 179-207. Alternatively, Plaintiffs seek damages for breach of the implied covenant of good faith and fair dealing. FAC ¶¶ 208-18. Plaintiffs also seek public injunctive relief to protect the general public by putting an end to Sirius XM's unlawful advertising and pricing scheme. *See* FAC ¶ 201 & Prayer, ¶ A.

At bottom, Plaintiffs want Sirius XM to include the Fee and its amount in the prices it advertises to the public, to adequately disclose the Fee and its true nature and basis to its customers, and to reimburse Plaintiffs and the members of the Class for any Fees collected by Sirius XM which were not adequately disclosed.

## PROCEDURAL HISTORY

Upon their discovery in 2023 of Sirius XM's U.S. Music Royalty Fee scheme, each Plaintiff tried to seek relief from Sirius XM by filing individual arbitrations, as set forth in Sirius XM's Customer Agreement. *See* Demands For Arbitration (Declaration of Eric Stephens ("Stephens Decl."), Exs. 3-6 (Dkt. 27-3–27-6). Plaintiffs were unable to proceed in arbitration, however, because Sirius XM refused to pay the arbitration filing fees as required by the Customer Agreement. *See* FAC ¶¶ 84, 105, 127, 155 (alleging Sirius XM's refusal to pay its arbitration fees with regard to each Plaintiff's claims). Consequently, Plaintiffs were forced to seek relief in this Court on behalf of themselves and the putative Class.

Plaintiffs filed their original Complaint in this matter on June 14, 2024. Dkt. 1. The case was subsequently stayed to permit the parties to participate in mediation; after the stay was lifted, Plaintiffs filed their corrected FAC, the operative pleading, on March 3, 2025. Dkt. 24.

[2] The Class is defined as: "All current and former Sirius XM subscribers in Oregon who paid a 'U.S. Music Royalty Fee' within the applicable statute of limitations." FAC ¶ 158.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

On April 2, 2025, Sirius XM filed its Motion To Dismiss Plaintiffs' FAC ("Motion") (Dkt. 25).[3]

## ARGUMENT

Sirius XM's Motion argues that Plaintiffs' UTPA claims are untimely, Plaintiffs have failed to state a claim under Oregon law, and Plaintiffs' request for injunctive relief is moot. For all the reasons below, Sirius XM's motion should be denied.

If the Court disagrees, Plaintiffs request leave to amend. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### I. PLAINTIFFS' UTPA CLAIM IS TIMELY UNDER THE DISCOVERY RULE

"Actions brought under [the UTPA] must be commenced within one year after the discovery of the unlawful method, act or practice." ORS 646.638 (6).

Plaintiffs bear the burden of pleading facts which show they are entitled to the benefit of the discovery rule. *Sturgis v. Asset Acceptance, LLC*, No. 3:15–cv–00122–AC, 2016 WL 223708, at *6 (D. Or. 2016). This requires Plaintiffs to describe the time and manner of their discovery of Sirius XM's unlawful conduct (*Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024)), and explain why they did not discover the unlawful conduct earlier (*Salem Sand & Gravel Co. v. City of Salem*, 260 Or. 630, 637 (1971)). Each Plaintiff has met this pleading requirement. *See infra* Section I.A.

The burden then shifts to Sirius XM. Because the statute of limitations is an affirmative defense, Sirius XM bears the burden of persuasion and the burden of producing evidence on any issue of fact that is material to Sirius XM's statute of limitations argument. *Keller v. Armstrong World Indus., Inc.*, 342 Or. 23, 38 n.12 (2006).

"The discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011). "The statute of limitations begins to run when the

[3] All page citations to the Motion and other papers filed in this action are to the blue ECF PACER page numbers at the top of each page.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists." *Id.* "Mere suspicion" is insufficient to commence the period of limitations. *Id.*

Courts in Oregon conduct a two-step analysis to determine whether a plaintiff should have known of the claims asserted. First, a plaintiff must have had "sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry notice.'" *Mathies v. Hoeck*, 284 Or. 539, 543 (1978).[4] Second, if the plaintiff had such knowledge, "it must also appear that a reasonably diligent inquiry would disclose the fraud." *Id.* Sirius XM bears the burden of showing this. *Id.* at 544 (holding that the defendant failed to meet its burden because it "offer[ed] no evidence to show that plaintiff could have discovered [the] fraud by the exercise of reasonable diligence"); *see also T.R. v. Boy Scouts of Am.*, 344 Or. 282, 299 (2008).

"Application of the discovery rule presents a factual question for determination by a jury unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Kaseberg*, 351 Or. at 278.

Because this is a motion to dismiss, Plaintiffs must be given "the deference due under Rule 12(b)(6)," which includes accepting all allegations as true and construing all inferences in their favor. *Mendoza v. Lithia Motors, Inc.*, No. 6:16–cv–01264–AA, 2017 WL 125018, at *3 (D. Or. Jan. 11, 2017). "To be dismissed as untimely, the complaint must reveal the untimeliness on its face." *Bodunov v. Kutsev*, 214 Or. App. 356, 359 (2007).

---

[4] The Oregon Supreme Court no longer uses the term "inquiry notice" because it is a "confusing and imprecise label." *Johnson v. Multnomah Cnty. Dep't of Cmty. Just.*, 344 Or. 111, 119 n.3 (2008). In this context, "inquiry notice" means to conduct an investigation.



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Courts rarely decide this issue on a motion to dismiss.[5] Even on summary judgment, after evidence has been presented, this question goes to the jury in all but the clearest of cases.[6]

As discussed below, each Plaintiff adequately pleads facts which show he or she is entitled to the benefit of the discovery rule. Further, a jury could conclude that Plaintiffs had no reason to know or suspect that Sirius XM was engaged in its U.S. Music Royalty Fee scheme or that they were victims of that scheme prior to reading the legal investigation advertisement discussing the scheme. The Court should therefore deny Sirius XM's extraordinary request to decide this issue as a matter of law.

### A. Plaintiffs Have Met Their Burden Of Pleading Facts Which Show They Are Entitled To The Benefit Of The Discovery Rule.

In order to benefit from the discovery rule, Plaintiffs must describe the time and manner of their discovery of Sirius XM's unlawful conduct and explain why they did not discover the unlawful conduct earlier. *See Clark*, 2024 WL 177755, at *3; *Sturgis*, 2016 WL 223708, at *7; *see also Salem Sand & Gravel Co.*, 260 Or. at 637. Plaintiffs have done this.

#### 1. Plaintiffs Have Described The Time And Manner Of Their Discovery Of Sirius XM's Unlawful Conduct.

Plaintiffs allege that they first learned of Sirius XM's U.S. Music Royalty Fee scheme when they saw a legal investigation advertisement discussing the scheme, and each Plaintiff

---

[5] *See*, *e.g.*, *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (denying motion to dismiss); *Bodunov v. Kutsev*, 214 Or. App. 356, 359 (2007) (same); *Doe 1 v. Lake Oswego Sch. Dist.*, 353 Or. 321, 335 (2013) (same); *Guirma v. O'Brien*, 259 Or. App. 778, 787–88 (2013) (same); *Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–*8 (D. Or. Apr. 24, 2025) (same); *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, --- F. Supp. 3d ----, 2025 WL 814924, at *3–*4 (W.D. Wash. Mar. 12, 2025) (same); *Russell v. Ray Klein, Inc.*, No. 1:19-CV-00001-MC, 2021 WL 1895238, at *2–*3 (D. Or. May 10, 2021) (same); *Olson v. Grant Cnty.*, No. 2:20-CV-01342-SU, 2021 WL 646055, at *4 (D. Or. Jan. 26, 2021) (same); *Mendoza v*, 2017 WL 125018, at *2–*3 (same); *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1145 (D. Or. 2020) (same).

[6] *See*, *e.g.*, *Kaseberg*, 351 Or. at 282–84 (holding that this issue raised questions of fact that precluded summary judgment); *T.R.*, 344 Or. at 300 (same); *Johnson*, 344 Or. at 123 (same); *Keller*, 342 Or. at 38 (same); *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 520–21 (2007) (same); *Bodin v. B. & L. Furniture Co.*, 42 Or. App. 731, 735 (1979) (same); *De Jaray v. Lattice Semiconductor Corp.*, No. 3:19-CV-86-SI, 2022 WL 4087788, at *5 (D. Or. Sept. 6, 2022) (same); *Lowry v. Univ. of Oregon Med. Sch.*, No. 3:16-CV-01049-YY, 2018 WL 5780849, at *6 (D. Or. Sept. 28, 2018) (same).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

alleges the date of this discovery. FAC ¶ 79 (Ms. Kirkpatrick learned about the scheme on March 3, 2023), ¶ 100 (Ms. Maxfield on July 2, 2023), ¶ 122 (Ms. DeMarco on March 10, 2023), ¶ 150 (Mr. Michael on July 18, 2023).

Each Plaintiff sent Sirius XM a notice of dispute regarding his or her claims concerning Sirius XM's U.S. Music Royalty Fee scheme within a month of discovering the unlawful conduct. FAC ¶ 80 (Ms. Kirkpatrick sent her notice of dispute on March 22, 2023), ¶ 101 (Ms. Maxfield on July 2, 2023), ¶ 123 (Ms. DeMarco on March 22, 2023), ¶ 151 (Mr. Michael on July 19, 2023).

After Sirius XM made no effort to resolve the dispute, each Plaintiff filed a demand for arbitration against Sirius XM with the American Arbitration Association ("AAA"). FAC ¶ 81 (Ms. Kirkpatrick filed her arbitration demand on June 5, 2023), ¶ 102 (Ms. Maxfield on September 14, 2023), ¶ 124 (Ms. DeMarco on June 5, 2023), ¶ 152 (Mr. Michael on October 24, 2023). This is within "one year after the discovery of the unlawful [conduct]." ORS 646.638 (6).

On Reply, Sirius XM may argue that the statute of limitations runs from the date of filing the complaint. First, this would not affect Ms. Maxfield and Mr. Michael's claims because the original complaint was filed within one year after they had discovered the unlawful conduct. *See* FAC ¶¶ 100, 150. Separately, the Court should apply principles of equitable tolling to suspend the running of the statute of limitations after the date each Plaintiff filed his or her demand for arbitration. If the Court applies equitable tolling, then Plaintiffs' claims are all timely under the discovery rule.

"Equitable tolling applies in such situations when three elements are present: (1) timely notice, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct by the plaintiff." *Harper v. Charter Commc'ns, LLC*, No. 219CV00902WBSDMC, 2021 WL 603724, at *4 (E.D. Cal. Feb. 16, 2021) (citing *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 724 (2020)).

All three elements are present here.



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

First, Sirius XM received timely notice. Plaintiffs believed that they were subject to an arbitration agreement with Sirius XM. In accordance with that arbitration agreement, each Plaintiff sent Sirius XM notice of his or her allegations and claims within a month after discovering the unlawful conduct, and each Plaintiff filed a demand for arbitration against Sirius XM shortly thereafter.

Second, Sirius XM is not prejudiced. "Under the second element, courts' 'core focus' is 'whether application of equitable tolling would prevent the defendant from defending a claim on the merits.'" *Id.* Plaintiffs' claims in their arbitration demands are the same as their claims filed in court. Thus, it cannot be said that "tolling [the] statute of limitations would undermine [Sirius XM's] ability to defend the propriety of the same penalty in superior court." *Id.*

Third, Plaintiffs acted reasonably and in good faith. Each Plaintiff followed Sirius XM's arbitration agreement by first sending Sirius XM a notice of dispute—each Plaintiff did this within a month of discovering the unlawful conduct. Each Plaintiff then filed a demand for arbitration around two months later, with the first arbitration demands filed on June 5, 2023. *See* FAC ¶¶ 81, 124. Sirius XM then spent months refusing to pay its required arbitration fees in all the cases, until the AAA eventually administratively closed every case due to Sirius XM's nonpayment, with the last case closed on February 14, 2024. *See* FAC ¶¶ 83–85, 104–06, 126–28, 154–56. Plaintiffs then filed this lawsuit shortly thereafter, on June 14, 2024. Dkt. 1. "These actions were each 'objectively reasonable under the circumstances' and 'subjectively in good faith' as [Plaintiffs] believed [themselves] to be bound to an arbitration agreement with [Sirius XM] that required arbitration with [AAA] and did not unreasonably delay." *Harper*, 2021 WL 603724, at *5.

Beyond satisfying all three elements, equitable tolling must apply in these types of circumstances. **Otherwise, corporate defendants, like Sirius XM, who impose arbitration agreements on its customers but refuse to actually arbitrate under those agreements, would be able to run out the statute of limitations during the time that they are refusing to arbitrate.** Courts should not reward such malfeasance. Accordingly, equitable tolling is appropriate.



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

### 2. Plaintiffs Have Explained Why They Could Not Have Discovered Sirius XM's Unlawful Conduct Sooner.

Plaintiffs also allege that they could not have discovered Sirius XM's unlawful conduct sooner because they did not know or suspect that Sirius XM had been secretly adding an additional music plan charge above the quoted rate in the form of the U.S. Music Royalty Fee or that it was a source of Sirius XM's profits (as opposed to a government-mandated charge). FAC ¶¶ 79, 100, 122, 150. Plaintiffs further allege that they had no reason to suspect Sirius XM's unlawful conduct because the nature of Sirius XM's misconduct was non-obvious and intentionally concealed. FAC ¶ 160.

<u>First</u>, Sirius XM did not disclose the Fee or its amount in its advertisements or during the sign-up process. FAC ¶¶ 34–55, 161. None of Sirius XM's advertisements for its music plans named or mentioned the existence of the Fee or its amount—not even in the fine print. FAC ¶¶ 35, 161. Likewise, none of Sirius XM's advertisements stated the true music plan price after adding the amount of the Fee. *Id.* Reasonable consumers who viewed Sirius XM's advertisements would not know or suspect that Sirius XM's music plans were subject to a hidden double-charge for the music plan itself in the form of the Fee. FAC ¶ 161.

Moreover, none of Sirius XM's competitors charge any separate royalty fee over and above their advertised music plan prices. FAC ¶ 162. Indeed, reasonable consumers would expect that the advertised price for Sirius XM's music plans would include the fundamental costs of obtaining the permissions necessary to provide the music content that Sirius XM promised was included in those plans. *Id.* Reasonable consumers would have no reason to suspect that Sirius XM was actually charging them a hidden and disguised double-charge for the music plans in the form of the Fee. FAC ¶ 163.

<u>Second</u>, Sirius XM implemented policies and practices which prevented its subscribers from noticing that they were being charged the Fee or from discovering its true nature. FAC ¶ 164. Sirius XM signed up subscribers for automatic renewal by default. *Id.* Once consumers were lured to sign up, Sirius XM prevented them from learning about its scheme by never thereafter sending them monthly or ongoing billing notices or invoices. *Id.* All the while, Sirius



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

XM silently and automatically renewed their subscriptions month after month and year after year. *Id.* And, while Plaintiffs do not allege ever logging into their customer accounts on the Sirius XM website, if a subscriber were to do so, the default view showed only the total amount due and did not list, let alone explain, the Fee. FAC ¶ 165.

### B. Plaintiffs Lacked Sufficient Knowledge That Would Prompt A Reasonable Person To Conduct An Investigation.

Whether each Plaintiff reasonably should have discovered Sirius XM's unlawful conduct turns on whether each Plaintiff had "sufficient knowledge" to "excite [his or her] attention" and prompt an investigation. *Mathies*, 284 Or. at 543. A plaintiff has a duty to investigate "only when there are facts that would prompt a reasonable person to make the inquiry." *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 521 (2007).

Sirius XM argues that "Plaintiffs knew enough to bring their claims in 2022" because Plaintiffs knew the total price they paid for their music plan subscriptions. *See* Mot. 16–17. Sirius XM's argument fails for two reasons.

First, none of the Plaintiffs allege ever knowing the total price they paid for the music plan subscriptions. Sirius XM attempts to impute this knowledge onto Plaintiffs by misstating their allegations.

Sirius XM argues that Ms. Kirkpatrick and Ms. DeMarco knew the total price because a monthly subscription charge appeared on their credit card statements. Mot. 16. Neither Ms. Kirkpatrick nor Ms. DeMarco allege noticing this charge on their credit card statements. On the contrary, they allege that "Sirius XM ***silently*** and automatically" charged their credit cards each month. FAC ¶¶ 71, 112 (emphasis added).

Moreover, it is entirely reasonable for a consumer not to notice such a charge. Most consumers do not review their credit card statements line by line or even know what subscriptions they are paying for at any given time. This is so common that Rocket Money made a business out of identifying and canceling unwanted subscriptions for its 5 million members. *See* www.rocketmoney.com.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Sirius XM argues that Ms. Maxfield knew the total price because she would notice a charge on her credit card for a six-month subscription at the regular rate of the music plan. Mot. 17. But the fact that Ms. Maxfield saw this charge is irrelevant because it was not the price she actually paid. Ms. Maxfield alleges that, after she saw this charge, she would call to ask for a new promotional price, and the agent would give her a new promotional price and credit her account for the difference. FAC ¶¶ 90–91. In other words, she never alleges seeing the total price that she actually paid. Indeed, because her account was credited, her credit card statements never showed the total price that she actually paid.

Sirius XM also argues that Plaintiffs would have seen the total amount due when they logged into their customer accounts. Mot. 17. But none of the Plaintiffs allege logging into their customer accounts. In fact, Plaintiffs allege that Sirius XM signed up subscribers for automatic renewal by default, and whenever a subscription was automatically renewed, Sirius XM would automatically charge the subscriber's credit card or debit card. *See* FAC ¶¶ 56–58. Because Plaintiffs were automatically charged, they had no reason to log into their customer accounts.

Thus, even if knowing the total price triggered a duty to investigate (which it does not), it would be questions of fact as to if, and when, each Plaintiff learned this information. This factual dispute cannot be decided on a motion to dismiss.

<u>Second</u>, even if Plaintiffs knew the total price at some point, that would not disclose the unlawful conduct or prompt a reasonable person to conduct an investigation. **Plaintiffs, like any reasonable consumer, would have assumed that any amount above the music plan's advertised price would be a result of legitimate taxes or government-related fees.** Nothing about seeing the total price would lead a reasonable consumer to suspect duplicity in the face of a far more mundane and apropos explanation. Reasonable consumers presume that companies are not engaging in unlawful conduct. Thus, knowing the total price would tell Plaintiffs nothing about Sirius XM's deceptive pricing scheme—Plaintiffs would still not know about the Fee or that the Fee was a source of Sirius XM's profits (as opposed to a government-mandated charge).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Sirius XM separately argues that Mr. Michael knew enough to bring his claims in 2022 because, on the last page of the online purchase process, Sirius XM stated that he would be charged the advertised cost for the music plan plus unspecified "Fees and Taxes." Mot. 17. This argument fails for the same reason. Mr. Michael alleges that he reasonably assumed that, by "Fees and Taxes," Sirius XM meant legitimate taxes and government-related fees. FAC ¶¶ 136, 143. Mr. Michael had no idea, and no reason to believe, that the "Fees and Taxes" amount was not actually comprised of any taxes or legitimate government-related fees whatsoever. FAC ¶¶ 137, 143. At no point did Mr. Michael view any mention of the existence of the U.S. Music Royalty Fee or its amount. FAC ¶¶ 136, 143.

At minimum, this issue cannot be decided on a motion to dismiss. Sirius XM's own caselaw illustrates just how clear the evidence must be before a court will dismiss a complaint based on timeliness. Sirius XM cites only two cases where a court did this, and both cases involved the defendant giving explicit notice to the plaintiff about its unlawful conduct.

In both *MacQuaid v. New York Times Co.*, No. 3:22-CV-00955-MO, 2023 WL 2633359 (D. Or. Mar. 24, 2023) and *Easterbrook v. LinkedIn Corp.*, No. 6:22-CV-01108-MC, 2023 WL 3022497 (D. Or. Apr. 20, 2023), the plaintiff alleged that the defendant automatically renewed her service without obtaining affirmative consent in violation of Oregon's automatic renewal law. In *MacQuaid*, the court held that the defendant's checkout page, which contained a section entitled "AUTOMATIC RENEWAL TERMS" was sufficient to alert the plaintiff that she might be subject to an automatic renewal without her affirmative consent. 2023 WL 2633359, at *1. In *Easterbrook*, the court reached the same conclusion based on specific disclosures made to the plaintiff on monthly billing statements and on the online checkout page. 2023 WL 3022497, at *1. By contrast, Plaintiffs do <u>not</u> allege that they were given explicit notice of Sirius XM's unlawful conduct.



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

### C. Sirius XM Has Failed To Present Evidence Proving That A Reasonable Investigation Would Have Revealed Its Unlawful Conduct.

Because Plaintiffs did not have sufficient knowledge to prompt an investigation, the Court should not reach the second step of the analysis, which is whether the investigation "would disclose the fraud." *Mathies*, 284 Or. at 543. That said, Sirius XM has failed its burden on this issue, as well.

"[T]he statute of limitations only begins to run if the investigation would have disclosed the necessary facts." *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 292 (2008). "The party who asserts the statute of limitations defense must prove that an investigation would have disclosed those facts." *Id.* at 294. Proof must be substantiated by evidence. *Id.* at 299. Additionally, a plaintiff "only is required to conduct an investigation that a reasonable person in his circumstances would conduct." *Id.* at 293.

Even though Sirius XM bears the burden of proof, Plaintiffs present evidence showing that an investigation would have been <u>futile</u>. The most reasonable investigation a person could conduct would be directly asking Sirius XM about the Fee. However, Plaintiffs allege that, if a customer contacted Sirius XM to inquire about the Fee, Sirius XM had a practice of falsely telling them that it was "government mandated" or was a government pass-through fee. FAC ¶¶ 5, 62, 167. Plaintiffs provide evidence of this by showing an online chat conversation where the Sirius XM agent falsely told the customer that the U.S. Music Royalty Fee was "government mandated." FAC ¶ 63. Sirius XM does not dispute Plaintiffs' allegations or even attempt to rebut Plaintiffs' evidence.

The Oregon Supreme Court similarly rejected the defendant's statute of limitations defense because the defendant "ha[d] not argued and ha[d] not pointed to evidence that, had plaintiff inquired, its officials would have disclosed [the misconduct] . . . . To the contrary, the record discloses evidence that when plaintiff did make a limited inquiry . . . his inquiries were rebuffed." *T.R. v. Boy Scouts of Am.*, 344 Or. at 299.

Again, Sirius XM bears the burden of proof—not Plaintiffs. Thus, even without Plaintiffs' evidence, Sirius XM's statute of limitations defense fails for the simple fact that it



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

has presented no evidence showing that an investigation would have revealed its unlawful conduct. "[I]f no evidence exists on an issue of fact that is material to defendant's statute of limitations argument, that omission defeats that argument." *Keller v. Armstrong World Indus., Inc.*, 342 Or. 23, 38 n.12 (2006). Plaintiffs' evidence only makes it abundantly clear that Sirius XM cannot present evidence to support its statute of limitations defense because none exists.

Sirius XM argues that Mr. Michael could have "learn[ed] more about the U.S. Music Royalty Fee" from "every one of the online materials he references." Mot. 17. First, Mr. Michael could not "learn more" about a Fee that he did not know existed. Second, Sirius XM does not specify what "online materials" it is referring to, and Mr. Michael does not allege seeing any "online materials" about the Fee. On the contrary, he alleges that, throughout the online purchase process, "[n]one of the webpages made any reference to the U.S. Music Royalty Fee or its amount." FAC ¶¶ 133, 140.

Plaintiffs separately allege that a disclaimer about the Fee is buried on the Sirius XM website (FAC ¶ 168), but Mr. Michael does not allege seeing this disclaimer or any link to this disclaimer. Moreover, that disclaimer falsely indicated that the Fee was a pass-through of a legitimate government charge from "Congress" that "Sirius XM is required by law to pay." FAC ¶ 168. Sirius XM also intentionally chose a name for the Fee that suggests it is a government fee—describing it as a "U.S." fee. FAC ¶ 169. Thus, even if a consumer found this disclaimer, they would be left believing that the Fee was a legitimate government pass-through charge. And, if the consumer contacted Sirius XM for additional clarity, the agent would confirm the consumer's belief by falsely telling them that the Fee was "government mandated." FAC ¶ 63.

At bottom, Sirius XM goes to great lengths to both prevent its subscribers from knowing that the Fee exists, and, if discovered, prevent its subscribers from learning about the Fee's true nature. Sirius XM outright lies to those few subscribers who discover the Fee by telling them it is "government mandated," in order to placate them and further its scheme.



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

### D. Public Policy Favors Applying The Discovery Rule.

As discussed above, Plaintiffs did not know, and could not have reasonably known, that Sirius XM was engaging in a deceptive pricing scheme or that they were victims of that scheme until they were informed of this by their attorneys.

When the Oregon Supreme Court recognized the discovery rule, it was done to protect plaintiffs in this exact position: "To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. ***To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law***." *T. R.*, 344 Or. at 291 (emphasis added).

Sirius XM asks the Court to strip Plaintiffs of their remedy before they reasonably could have known that they had been wronged. The Court should be concerned about the incentives of such a ruling: It would be tantamount to rewarding defendants like Sirius XM for successfully hiding, obscuring, and lying to their customers about their deceptive practices. The law should not reward successful deception. This, in addition to the remedial nature of the UTPA to protect consumers, should counsel strongly against deciding this issue as a matter of law.

## II. SIRIUS XM'S MOTION IS A THINLY DISGUISED MOTION FOR SUMMARY JUDGMENT.

To survive a motion to dismiss, a plaintiff need only satisfy the Rule 8 pleading standards established by the U.S. Supreme Court in *Iqbal* and *Twombly*. Specifically, a plaintiff must merely plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

The plausibility standard only requires the complaint to "raise a reasonable expectation that discovery will reveal evidence to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quotation marks omitted).

When considering a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff, as the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). A court also must draw all reasonable inferences in favor of the plaintiff and accept all well-pleaded allegations of material fact as true. *See Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Thus, a court is not to question or adjudge the facts pleaded in a complaint at this motion to dismiss stage, as a motion to dismiss merely "tests the legal sufficiency" of the plaintiff's allegations. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (on a motion to dismiss, "[t]he issue is not whether the plaintiff ultimately will prevail, but whether he is entitled to offer evidence to support his claim."). A claim may only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Navarro*, 250 F.3d at 732.

Additionally, on a motion to dismiss, a court typically cannot consider evidence beyond the four corners of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If a court considers evidence outside the complaint, its attachments and/or matters subject to judicial notice, the court must convert the motion into one for summary judgment and provide plaintiff the opportunity to obtain discovery. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**Sirius XM's motion to dismiss under Rule 12(b)(6) sidesteps these standards and instead employs two inappropriate tactics: (1) denying or ignoring key operative facts pleaded in the FAC, and (2) seeking to introduce new factual allegations that are not pleaded in the FAC (and which Plaintiffs dispute).**

Indeed, Sirius XM's motion is effectively a premature summary judgment motion masquerading as a motion to dismiss under Rule 12(b)(6). A motion for summary judgment is



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

wholly inappropriate at this juncture because there has been no discovery and because Plaintiffs have not had any opportunity to cross examine defense witnesses and/or probe the veracity of the new assertions which Sirius XM's motion seeks to inject into this dispute. *See Watts v. Jackson Hewitt Tax Service Inc.*, 579 F. Supp. 2d 334, 344 (E.D.N.Y. 2008) ("[T]he court declines to transform this motion into one for summary judgment, finding that, without access to additional discovery, the plaintiffs lack sufficient notice to allow them to contest the defendants' disclosures properly.").

The Court's duty is not to decide between competing contentions of fact. The Court's role at this stage is merely to determine whether, assuming that all the facts alleged in Plaintiffs' FAC are true and giving Plaintiffs the benefit of all inferences flowing from those alleged facts, some plausible claim exists under which Sirius XM may be liable (even if other outcomes are also plausible). For all the reasons set forth below, Plaintiffs' FAC meets that standard by a substantial margin.

## III. PLAINTIFFS HAVE ALLEGED A VALID CLAIM UNDER THE UTPA.

Plaintiffs have sufficiently alleged the three required elements of a UTPA claim. Sirius XM's Motion does not actually challenge this. Instead, Sirius XM argues that Plaintiffs' claim under the UTPA is "meritless" and must be dismissed (1) because Sirius XM disclosed the "all-in" price of its music plans at purchase, and (2) because Sirius XM's alleged practices do not "deceive a reasonable consumer." Mot. 18. These arguments are not supported either by the allegations of Plaintiffs' FAC or by controlling law; thus, Sirius XM's motion to dismiss Plaintiffs' UTPA claim must be denied.

### A. Plaintiffs Have Sufficiently Alleged The Three Required Elements Of A UTPA Claim.

Plaintiffs plead one claim alleging Sirius XM's violation of the UTPA. *See* FAC ¶¶ 179–207 (Count I). That one claim, in turn, is sub-divided into violations of three separate provisions of the UTPA. Specifically, Plaintiffs allege that (1) Sirius XM violated ORS 646.608(1)(e) by representing that its music plans had characteristics that they did not have;



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

(2) Sirius XM violated ORS 646.608(1)(i) by advertising its music plans with an intent not to sell them as advertised; and (3) Sirius XM violated ORS 646.608(1)(s) by making false or misleading representations of fact concerning the offering price of its music plans. FAC ¶ 189. Plaintiffs sufficiently allege these violations.

Under the UTPA, a consumer may assert a private right of action in which he or she seeks damages and/or injunctive relief. "[A] person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper." ORS § 646.638(1). This is what Plaintiffs are doing.

A properly pleaded UTPA violation contains three necessary elements. "A plaintiff bringing an action under ORS 646.638 must prove that (1) the defendant committed an unlawful trade practice enumerated in ORS 646.608; (2) the plaintiff suffered an ascertainable loss of money or property; and (3) the plaintiff's loss was caused by the defendant's unlawful trade practice." *Bohr v. Tillamook County Creamery Ass'n*, 373 Or. 343, 349 (2025).

Plaintiffs have properly pleaded all three of these elements.

<u>First</u>, Plaintiffs allege that Sirius XM committed three of the unlawful trade practices enumerated in ORS 646.608.

- **ORS 646.608(1)(e)** states that a defendant engages in an unlawful practice if it "[r]epresents that . . . services . . . have . . . characteristics . . . that the . . . services do not have[.]" According to the FAC, Sirius XM represents that its music plans have a characteristic (an advertised price) that the music plans do not have (because Sirius XM charges more than the advertised price by adding the Fee). *See, e.g.,* FAC ¶¶ 1 ("Sirius XM falsely advertised its music plans at lower prices than it actually charged"), 19 ("Sirius XM falsely advertised its music plans at lower rates than it actually charged by not including in the advertised price the amount of its invented 'U.S. Music Royalty Fee.'"), 188 (listing all conduct by Sirius XM that



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

violates UTPA). *See also* FAC ¶ 189(a) (alleging that Sirius XM's conduct violated ORS 646.608(1)(e)).[7]

- **ORS 646.608(1)(i)** states that a defendant engages in an unlawful practice if it "[a]dvertises . . . services with intent not to provide the . . . services as advertised[.]" According to the FAC, Sirius XM advertises its music plans (at an advertised price) with an intent not to provide the services as advertised (because Sirius XM charges more than the advertised price by adding the Fee). *See, e.g.,* FAC ¶¶ 1, 19 (quoted above). *See also* FAC ¶ 189(b) (alleging that Sirius XM's conduct violated ORS 646.608(1)(i)).

- **ORS 646.608(1)(s)** states that a defendant engages in an unlawful practice if it "[m]akes false or misleading representations of fact concerning the offering price of, or the person's cost for . . . services." According to the FAC, Sirius XM makes false or misleading representations of fact concerning the offering price of or a person's cost for a music plan (because Sirius XM advertises one offering price or cost and then uses the Fee to charge a different, higher price). *See, e.g.,* FAC ¶¶ 1, 19 (quoted above). *See also* FAC ¶ 189(c) (alleging that Sirius XM's conduct violated ORS 646.608(1)(s)).

Consequently, Plaintiffs have pleaded the first of the three UTPA elements—that Sirius XM committed three of the unlawful trade practices enumerated in ORS 646.608.

<u>Second</u>, Plaintiffs allege that each suffered an ascertainable loss of money under two separate injury theories—the "purchase price theory" and the "price premium theory."

**Purchase Price Theory of Ascertainable Loss**. Each Plaintiff alleges that he or she purchased or was charged for a Sirius XM music plan that, unbeknownst to them, included the

---

[7] To the extent that the Fee is considered part of the "services" being advertised, Sirius XM further violates ORS 646.608(1)(e) by representing that the Fee has a characteristic (that of being a pass-through of a government-mandated charge) that it does not have (because the Fee is actually created by Sirius XM as a profit center). *See, e.g.,* FAC ¶ 5 ("After customers signed up for Sirius XM service, Sirius XM furthered its scheme by falsely representing that the Fee was a government-related or legitimate pass-through charge that was not kept as profit. If a customer contacted Sirius XM to inquire about the Fee, Sirius XM had a practice of outright falsely telling the subscriber that it was 'government mandated' or was a government pass-through fee."); FAC ¶ 6 ("Sirius XM's U.S. Music Royalty Fee scheme has been the source of significant profits for Sirius XM for many years. . . . . [I]n 2023, the deceptive U.S. Music Royalty Fee comprised 108% of the net profits for the entire company.").



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

additional Fee in the price paid. *See* FAC ¶¶ 70–71, 79 (Ms. Kirkpatrick), 89–91, 100 (Ms. Maxfield), 114–15, 122 (Ms. DeMarco), 133–35, 150 (Mr. Michael). This theory of injury—called the "purchase price theory"—satisfies the requirement to plead an ascertainable loss under the UTPA. *Clark v. Eddie Bauer LLC*, 371 Or. 177, 194 (2023) ("[W]e conclude that the purchase price theory is a viable means of establishing ascertainable loss as required under ORS 646.638 and is, therefore, a cognizable theory of loss in plaintiff's case. [¶] At its essence, the purchase price theory is that one person has been induced by another person's unlawful activities to pay money for something that the first person would not otherwise have bought."). *In accord with* FAC ¶ 195 ("Plaintiffs and Class members reasonably relied on Sirius XM's material misrepresentations, and would not have purchased, or would have paid less money for, Sirius XM's music plans had they known the truth.").

**Price Premium Theory of Ascertainable Loss**. Separately, Plaintiffs allege that Sirius XM's false advertising "caused the demand for its music plans to be artificially increased and caused all subscribers of those plans, including Plaintiffs and Class members, to pay premiums to Sirius XM that they otherwise would not have paid." FAC ¶ 196. This theory of injury—called the "price premium theory"—satisfies the requirement to plead an ascertainable loss under the UTPA. *Bohr v. Tillamook County Creamery Ass'n*, 373 Or. 343, 371 (2025) (holding that, at the motion to dismiss stage, "a court is required to assume that plaintiffs will be able to adduce evidence in support of their allegation that Tillamook's false representations had the effect of systematically inflating the prices of its goods across the market").[8]

[8] The *Bohr* court (at 368) explained the ascertainable harm caused by the price premium theory using this example: "It may be true that consumers who did not rely on Tillamook's alleged misrepresentations were not deceived, but it does not necessarily follow that *none* of them suffered an ascertainable loss—at least, if plaintiffs' price premium theory can be economically proven. Suppose a hypothetical Oregon consumer purchased Tillamook cheese for four dollars, instead of a competitor's cheese for three dollars, for the sole reason that the consumer prefers to support Oregon businesses, and that she knew nothing about Tillamook's production practices. That buyer received exactly what she was expecting at the price she was willing to pay. But if, as plaintiffs allege, the market price of the Tillamook cheese would have been less than four dollars if not for Tillamook's deceptive marketing, then the consumer still experienced an economic loss." (Emphasis in original.)



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Consequently, Plaintiffs have pleaded the second of the three UTPA elements—that each Plaintiff suffered an ascertainable loss.

Third, each Plaintiff alleges in detail how and why each Plaintiff's loss was caused by Sirius XM's unlawful trade practice. *See* FAC ¶¶ 69–74 (details of Sirius XM's misrepresentations to Ms. Kirkpatrick, including "When Ms. Kirkpatrick signed up for her Sirius XM music plan, she was relying on Sirius XM's explicit representations regarding the monthly price of the music plan."; 87–95 (same as to Ms. Maxfield), 108–117 (same as to Ms. DeMarco), 130–146 (same as to Mr. Michael). *See also* FAC ¶ 174 ("Plaintiffs and Class members all sustained injury as a direct result of Sirius XM's standard practices and schemes, bring the same claims, and face the same potential defenses.").

Consequently, Plaintiffs have pleaded the third of the three UTPA elements—that the plaintiff's loss was caused by the defendant's unlawful trade practice.

*That should be the end of the matter.* Oregon law requires only three allegations to sufficiently plead a UTPA violation, and Plaintiffs have made those three allegations. Plaintiffs' compliance with the law is so obvious that Sirius XM's Motion does not actually challenge the manner in which Plaintiffs plead the three required elements. The Motion does not contend that Plaintiffs' allegations somehow fail to fall within any of the three cited statutory unlawful practices, or that Plaintiffs' allegations fail to allege ascertainable loss, or that Plaintiffs' allegations fail to allege causation. Instead, as discussed below, Sirius XM attempts to manufacture additional requirements that do not exist under Oregon substantive law or the federal pleading rules. But the Court need not address Sirius XM's extraneous arguments, because Plaintiffs have sufficiently alleged a UTPA claim.

### B. Sirius XM's Arguments Are Meritless.

Instead of addressing the three necessary elements of a UTPA claim, Sirius XM takes the view from 35,000 feet and airily contends, "No reasonable consumer would be misled so long as they are told what they are purchasing and how much it costs out the door." Mot. 18. Sirius XM is wrong. First, Sirius XM's "all-in" price argument improperly relies on unalleged



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

facts and inapplicable law. Second, to the extent Oregon applies a reasonable consumer test, Plaintiffs have alleged numerous deceptive representations, omissions, and practices by Sirius XM, each of which is likely to mislead the reasonable consumer. Third, Sirius XM's attempt to employ a reasonable consumer test at the pleading stage is premature—to the questionable extent it applies.

### 1. Sirius XM's "All-In" Argument Improperly Relies On Unalleged Facts And Inapplicable Law.

The premise of Sirius XM's argument—that it purportedly disclosed the "all-in" prices of its music plans to its customers at the time of purchase—is improper because it relies on facts that are neither alleged in Plaintiffs' FAC nor are otherwise before this Court; thus, it may not be considered at this motion to dismiss stage. *See Campanelli*, 100 F.3d at 1479 ("The Court's review [of a motion to dismiss] is generally limited to the contents of the complaint.").

Indeed, this argument runs contrary to many of the factual allegations in Plaintiffs' FAC, including, *e.g.*, that Sirius XM "would not name or disclose the existence *or amount* of the U.S. Music Royalty Fee during the phone sign-up process," and that Sirius XM hid the Fee under the generic category of "Fees and Taxes" during website sign-up, without identifying either the Fee or its amount. FAC ¶¶ 43–55 (emphasis added). These allegations must be accepted as true at this motion to dismiss stage.[9] *See Wyler Summit Partnership*, 135 F.3d at 661.

Moreover, this argument fails on the merits. Even if the Court were to accept the new, unsupported facts alleged in Sirius XM's Motion, Sirius XM cites no Oregon law to support its argument that the UTPA is not violated simply because Sirius XM purportedly disclosed the

---

[9] Sirius XM suggests that Plaintiffs are being evasive by failing to expressly allege that they were not given an "all-in" price at signup. Mot. 23. But the fact is that no Plaintiff (not even Plaintiff Michael, who signed up via Sirius XM's website) is certain of whether or not they were given an "all-in" price at purchase. What Plaintiffs are certain of, is that they were *not* informed about the 21.4% U.S. Music Royalty Fee. Sirius XM's allegations are premature because, even if this Court were to accept the potential merits of Sirius XM's "all-in" argument, this Court could not consider it until potential supporting evidence was produced for its review after discovery had taken place (and which only could be considered at the later summary judgment phase).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

"all-in" price of its music plans at purchase. Nor could Plaintiffs find any such law. Instead, Sirius XM cites a single California decision that applies California law *on a summary judgment motion*, rather than on a motion to dismiss under Oregon law. *See* Mot. 18–19 (citing *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466 (2006)). Besides being legally inapplicable, Sirius XM's lone supporting authority is also factually inapposite.[10]

In the *Wayne* case cited by Sirius XM, the defendant in that case had offered optional shipping insurance at a rate of $0.70 per $100 of the declared value of the shipment. *Id.* at 471–72. The plaintiff claimed that this charge was unconscionable under California law because the cost of the shipping insurance was only $0.35 per $100 and that the defendant was marking up the price by 100% and keeping the remainder as profit. *Id.* at 473. The California Court of Appeal disagreed with the plaintiff and upheld the lower court's granting of summary judgment on this issue. *Id.* at 480–84. Specifically, the appellate court found that the charge was not unconscionable because discovery had revealed not only that the total, "all-in" price was disclosed to plaintiff at the time of purchase but also that *the charge itself* was disclosed to plaintiff both in advertisements and at purchase. *Id.* at 481–82. Further, the charge was not mandatory but optional—a customer could decline shipping insurance and avoid paying the charge entirely or could purchase shipping insurance elsewhere. *Id.* at 482. Indeed, defendant had informed customers of this option. *See id.* at 472 (the order form expressly stated: "You may purchase declared value coverage through the carrier designated … or from an independent company, if available."). Moreover, discovery had revealed that defendant's order

[10] Sirius XM claims that Oregon follows California's reasonable consumer test. Mot. 19. However, in the case Sirius XM cites, *Vitort v. Kroger Co.*, No. 22-35185, 2023 WL 3143690, at *1 n.2 (9th Cir. Apr. 28, 2023), the court recognized that the Oregon Supreme Court has never directly held this, but applied California's standard because the parties did not dispute it. **The Oregon Supreme Court has since indicated that the UTPA may apply a more relaxed standard because the function of the UTPA should be to "protect society," including protecting "gullible people from themselves."** ***Clark v. Eddie Bauer LLC*****, 371 Or. 177, 186, 532 P.3d 880, 886 (2023). This appears to follow the "least sophisticated consumer" standard that has been applied to other state consumer protection statutes.** *See, e.g.*, *Peterson v. Kitsap Community Federal Credit Union*, 171 Wash. App. 404, 426 (2012) ("In evaluating the tendency of language to deceive" a reasonable person, courts "look 'not to the most sophisticated [consumers] but rather to the least.'"); *Keithly v. Intelius*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011) ("The capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among us.").



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

form expressly disclosed to customers that it marked up the cost of the shipping insurance it sold, stating: "Please note that we may surcharge the cost of this product as an administrative expense, for services such as processing of potential claims and related services." *Id.* at 483–84. **Thus, in *Wayne*, discovery revealed that defendant's customers were not merely given an "all-in" price; they were also informed about the complained-of charge, its specific cost, and that it was a profit center for defendant, all at the time of sale. Moreover, customers were given the option to avoid paying the charge altogether by purchasing shipping insurance elsewhere or not purchasing it at all.** *See id.*

Here, in stark contrast to the *Wayne* case, Sirius XM did not disclose either the existence or the amount of the U.S. Music Royalty Fee at the time of sale (or thereafter), much less that it was a profit center for Sirius XM. FAC ¶¶ 31, 34–35, 43, 53. Additionally, Sirius XM's Fee is not optional, but rather is imposed upon all Sirius XM customers who purchase music plans. FAC ¶¶ 7, 20. Thus, the *Wayne* case is wholly inapplicable to the case at bar. *See Sepanossian v. National Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 203–04 (2023) (distinguishing *Wayne* and affirming denial of motion to dismiss where plaintiff alleged that "energy" and "environmental" fees charged by defendant were misleadingly named, were unrelated to actual energy or environmental costs, and existed for defendant's profit, and recognizing that "[r]easonable consumers are entitled to infer that the descriptive name attached to a particular fee they are being charged has some connection to the fee").

### 2. Plaintiffs Have Alleged Numerous Deceptive Representations, Omissions, And Practices By Sirius XM, Each Of Which Is Likely To Mislead The Reasonable Consumer.

Sirius XM also argues that Plaintiffs' UTPA claim should be dismissed because no reasonable consumer would have been deceived by its complained-of practices. Mot. 18.

Contrary to Sirius XM's assertion, Plaintiffs do <u>not</u> concede that the UTPA employs a "reasonable consumer" standard. *See* Mot. 18. Indeed, the Oregon Supreme Court has never directly held that a reasonable consumer test applies to UTPA claims. *See Vitort v. Kroger Co.*, No. 22-35185, 2023 WL 3143690, at *1 n.2 (9th Cir. Apr. 28, 2023).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Further, to the extent a UTPA claim requires applying a "reasonable consumer" standard, the Oregon Supreme Court has indicated that the UTPA follows other state consumer protection laws which treat a reasonable consumer as the "least sophisticated consumer." *Cf. Clark v. Eddie Bauer LLC*, 371 Or. 177, 186 (2023) ("[T]he function of the [UTPA] should be to 'protect society,' including protecting 'gullible people from themselves.'") *with Keithly v. Intelius*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011) ("The capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among us."); *see also Peterson v. Kitsap Community Federal Credit Union*, 171 Wn. App. 404, 426 (2012) ("In evaluating the tendency of language to deceive, [courts] look not to the most sophisticated consumers but rather to the least.").

That said, Plaintiffs have alleged numerous deceptive representations, omissions, and practices by Sirius XM, each of which is likely to mislead a reasonable consumer.

***First***, Plaintiffs' FAC alleges that Sirius XM enticed consumers to sign up for its music plans by advertising those plans at prices which were much lower—by 21.4%—than it actually charged. FAC ¶¶ 1–2, 33–42. Sirius XM also failed to properly disclose the existence and amount of the Fee when consumers signed up for music plans, upon renewal, and throughout they time they were Sirius XM customers. FAC ¶¶ 2, 43–66.

***Second***, Plaintiffs' FAC alleges that Sirius XM actively hid the Fee. For example, in both its advertisements and during online sign-up, Sirius XM lumps the Fee into the generalized category of "Fees and Taxes" rather than mentioning the Fee by name—even when the U.S. Music Royalty Fee is the only "fee" or "tax" charged. FAC ¶¶ 43–55. Sirius XM's sole fine print disclaimer in its advertising, at most, is that unspecified "Fees and Taxes" apply, and the advertising does not even state the dollar amount of this lump category of "Fees and Taxes," let alone what are its components or their amounts. *See* FAC ¶¶ 34–42 (including an example promotional mailer, an example promotional email, and example advertising on the Sirius XM website). After sign-up, Sirius XM prevents its customers from learning about the Fee by failing to send them periodic invoices and by silently and automatically renewing their subscriptions. FAC ¶¶ 3, 56–60.



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

***Third***, Plaintiffs' FAC alleges that Sirius XM misrepresented the true nature of the Fee. If a customer somehow discovered the Fee and asked Sirius XM about it, Sirius XM would falsely tell him or her that the Fee was "government mandated" and outside of Sirius XM's control. FAC ¶¶ 61–66. Sirius XM's website also falsely described the Fee as a pass-through government charge from "Congress" that "Sirius XM is required to pay"; even the name of the Fee suggests that it is a "U.S." government charge. FAC ¶¶ 64–65.

Consumers reasonably believe that "taxes and fees" means legitimate taxes and government-mandated charges. FAC ¶ 171. Sirius XM took advantage of this reasonable belief by calling it a "U.S." Fee to falsely indicate to subscribers that it was a government pass-through charge, when in fact it was not. FAC ¶ 169. Sirius XM argues that labeling the Fee as a "U.S." Fee is not misleading because "U.S." is used in other contexts, such as the U.S. Open. Mot. 25. But context matters. Reasonable consumers do not generally believe that tennis tournaments are run by the government. However, reasonable consumers do believe that charges that are listed under "taxes and fees" are legitimate government-mandated charges. *See, e.g., Tillage v. Comcast Corp*., No. 17-cv-06477-VC, 2021 WL 3417940, at *1 (N.D. Cal. July 16, 2021) ("if Comcast advertised a base price for a cable package and merely noted that this price did not include 'fees' without further specification, such an advertisement would likely be deceptive because the Broadcast TV Fees and Regional Sports Fees <u>are not the types of fees that an ordinary consumer would expect to be added to the base price (in contrast to the more typical government-imposed fees</u>") (emphasis added).

Sirius XM's Motion argues that the name "U.S. Music Royalty Fee" is not misleading, and that any person who believed that the Fee was a government charge merely had to "click a link or two" to understand the true nature of the Fee. Mot. 25. This argument attempts to hide the forest by focusing on a singular tree. When viewed alongside the numerous other allegations of Plaintiff's FAC (which Sirius XM conveniently ignores)—*e.g.*, that the Fee is categorized as "Fees and Taxes" in advertisements and at sign-up (FAC ¶¶ 33–55); that Sirius XM's website falsely described the Fee as a pass-through government charge from "Congress" that "Sirius XM is required to pay" (FAC ¶ 64); and that <u>Sirius XM falsely told customers that</u>



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

the Fee was government-mandated and outside of Sirius XM's control (FAC ¶¶ 62–63)—it is easy to see how a reasonable consumer would be deceived into thinking that the Fee is a legitimate government charge rather than a profit center for Sirius XM.

Plaintiffs also allege that the amounts that Sirius XM collected in U.S. Music Royalty Fees was greater than the amounts Sirius XM actually paid out in music royalties, thus confirming the Fee's status as a true profit center and not a pass-through. FAC ¶¶ 6, 28.

### 3. The Reasonable Consumer Test Is An Issue Of Fact, To The Extent It Applies At All.

As detailed above, Plaintiffs have plausibly alleged that reasonable consumers could be deceived by Sirius XM's practices. Plaintiffs' allegations are more than sufficient to survive a motion to dismiss. The reasonable consumer test is a question of fact for the jury, except in the rarest of circumstances. "Generally, whether a product's labels are deceptive under a consumer protection statute is a question of fact for the jury." *Silva v. Unique Beverage Co., LLC*, No. 3:17-CV-00391-HZ, 2017 WL 4896097, at *3 (D. Or. Oct. 30, 2017). *See also Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[C]ourts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.") (applying California law). The Court should decline Sirius XM's invitation to act as a jury.

While the question of whether an advertisement is deceptive to the reasonable consumer can theoretically be determined on a motion to dismiss, that occurs only in a "rare situation." *Williams*, 552 F.3d at 939 (reversing district court's finding). If an advertisement "*could be* misleading to the reasonable consumer" (*Silva*, 2017 WL 4896097, at *6) (emphasis added), the motion to dismiss must be denied and the question reserved for the jury. "Could be" is a standard that protects the plaintiff's claim in almost every circumstance.

And again, it bears repeating that the function of the UTPA is to "protect society," including protecting "gullible people from themselves." *Clark*, 371 Or. at 186. At this point, Plaintiffs' counsel needs to emphasize a reality: lawyers and judges are not ordinary consumers. Lawyers and judges have been trained in the art of close reading; lawyers and



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

judges read all of the text, scrutinize what is being said and instinctively identify what is not being said. Ordinary consumers do not. And "gullible people" absolutely do not. The "reasonable consumer" standard needs to be applied in light of these realities. Sirius XM's motion should therefore be denied.

With that said, the reasonable consumer standard does not appear to apply to two of Plaintiffs' three UTPA allegations. While ORS 646.608(1)(s) expressly refers to a defendant that "[m]akes false or misleading representations," ORS 646.608(1)(e) and ORS 646.608(1)(i) do not. Instead, ORS 646.608(1)(e) and (i) refer only to an objective comparison. Under ORS 646.608(1)(e), a product either possesses or does not possess an advertised characteristic, and, under ORS 646.608(1)(i), a defendant either intends or does not intend to provide the service as advertised. These UTPA violations focus on the product and on the defendant's intent—not on the reasonable consumer.

Moreover, as to all three of the UTPA violations alleged in the FAC, Plaintiffs are alleging that they and the class members also suffered the "price premium" form of ascertainable loss—and, as the Oregon Supreme Court recently made clear, a plaintiff does not need to be deceived in order to suffer this form of harm. *Bohr*, 373 Or. at 368 ("That buyer received exactly what she was expecting at the price she was willing to pay. But if, as plaintiffs allege, the market price of the Tillamook cheese would have been less than four dollars if not for Tillamook's deceptive marketing, then the consumer still experienced an economic loss.").

### C. Sirius XM's Attempt To Distinguish *Carovillano* Misses The Mark.

Finally, Sirius XM attempts to distinguish *Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562 (S.D.N.Y. 2024). *Carovillano* is a case in which the United States District Court for the Southern District of New York denied Sirius XM's motion to dismiss similar consumer fraud claims under New York law, based on similar factual allegations. *See Id.* at 566 (holding "At this [motion to dismiss] stage, accepting the Complaint's well-pled factual allegations as true, the Court finds that these plausibly allege that Sirius XM's disclosures about the Fee were misleading, in violation of GBL §§ 349 and 350. As a result, the Court denies Sirius XM's motion in substantial part ….") (emphasis added).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

In *Carovillano*, as here, the plaintiffs alleged, *inter alia*, that Sirius XM's advertisements were misleading because they did not "mention … the 21.4% U.S. Royalty Fee" and rather only generally stated that "fees and taxes apply." *Id.* at 576. Recognizing that "courts have rejected the argument that a generalized disclaimer as to 'additional fees' bars claims asserting the non-disclosure of fees that a reasonable consumer would not expect," the New York federal district court found that "Sirius XM cannot secure dismissal on the pleadings on plaintiffs' GBL §§ 349 and 350 claims based on its shorthand and inconspicuous disclosure that 'fees and taxes apply.'" *Id.* at 575-76 (citing cases).[11]

The court similarly rejected Sirius XM's argument (repeated here) that it had properly disclosed the Fee as a matter of law by "furnishing customers with its Customer Agreement and identifying via hyperlink its U.S. Music Royalty Webpage, which was available online …." *Id.* at 576. Rather, the court found that "the existence of a 21.4% U.S. Royalty Fee would not inherently have been expected by a reasonable consumer, in the manner of a state sales tax or government surcharge." *Id.* at 577. The court also rejected Sirius XM's argument (again, repeated here) that dismissal was proper because applicable fees and taxes "invariably" were discussed at sign-up, as that argument was based on facts which were not alleged in the *Carovillano* complaint. *Id.*

Sirius XM argues that it "would be a mistake" for this Court to follow the New York federal district court's denial of its motion to dismiss in *Carovillano* because, unlike those plaintiffs, Plaintiffs here (1) were provided the "all-in" price of their music plans at sign-up and (2) "had notice" of the Customer Agreement, based on the fact that they pursued arbitrations years after signing up for Sirius XM music plans. Mot. at 15. These arguments fail.

[11] In denying Sirius XM's motion to dismiss in *Carovillano*, the court relied in part on *Tillage v. Comcast Corp.*, 2021 WL 3417940 (N.D. Cal. July 16, 2021), in which the court denied a defendant's motion to dismiss California consumer fraud claims based on similar undisclosed fees, finding that "[m]erely noti[ng] that th[e] [advertised] price d[oes] not include 'fees' without further specification … would likely be deceptive … because the [fees at issue] are not the types of fees that an ordinary consumer would expect to be added to the base price (in contrast to the more typical government-imposed fees)." *Id.* at *1.



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

As set forth above, Plaintiffs' FAC does *not* allege that Plaintiffs were provided an all-in price at sign-up;[12] thus, this argument is improper on a motion to dismiss. *See Campanelli*, 100 F.3d at 1479. Indeed, Plaintiffs' FAC alleges quite the opposite, *i.e.*, that Sirius XM "would not name or disclose the existence or amount of the U.S. Music Royalty Fee during the phone sign-up process" and hid the fee under the generic category of "Fees and Taxes" during website sign-up. FAC ¶¶ 43–55.

Further, the fact that Plaintiffs pursued arbitrations sometime ***after*** learning that they were being charged the 21.4% U.S. Music Royalty Fee—and years after they initially signed up for Sirius XM music plans—does not establish that they "had notice" of the Fee or of the contents of the Sirius XM Customer Agreement ***at the time of sign-up***. *See State v. CLA Estate Services, Inc.*, 23 Wash. App.2d at 295 ("[A] practice is unfair or deceptive if it induces contact through deception, even if the consumer later becomes fully informed ...") (Washington law).

Sirius XM's motion to dismiss should be denied.

## IV. PLAINTIFFS HAVE ALLEGED A VALID CLAIM UNDER THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Next, Sirius XM argues that Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing under Oregon law should be dismissed because Sirius XM had a contractual right to charge the 21.4% U.S. Music Royalty Fee. This oversimplistic argument ignores both applicable law and the allegations of Plaintiffs' FAC.[13]

[12] Sirius XM's motion cites Paragraphs 60 and 165 of the FAC as a "conce[ssion]" that Plaintiffs' customer accounts displayed the "total amount due." Mot. at 15. But this allegation does not establish that Plaintiffs were provided a total amount due or all-in price *at sign-up*—indeed, customers would not be able to access, nor would they even have, a Sirius XM customer account until sometime *after* signing up for a Sirius XM music plan.

[13] Sirius XM also appears to argue that Plaintiffs' good faith and fair dealing claim fails to the extent Plaintiffs allege that no contract existed between the parties. This argument ignores the rules of pleading as well as the plain allegations of Plaintiffs' FAC. Indeed, Plaintiffs have pleaded this cause of action in the alternative, and also have expressly alleged that certain "provisions" of the Sirius XM Customer Agreement (as opposed to the Agreement itself)—specifically, the provision purporting to give Sirius XM the discretion to charge the U.S. Music Royalty Fee—are void and unenforceable, *inter alia*, because they are "lacking in mutuality" and due to the "intentional, deceptive and hidden nature of Sirius XM's misconduct" alleged in the FAC. *See* FAC ¶¶ 209–10, 216.



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Sirius XM acknowledges that Oregon law recognizes a claim for breach of the implied covenant of good faith and fair dealing. "The purpose of the good faith doctrine is to prohibit improper behavior in the performance and enforcement of contracts." *Best v. U.S. Nat. Bank of Oregon*, 303 Or. 557, 562 (1987). This duty arises "[w]hen one party to a contract is given discretion in the performance of some aspect of the contract," and it requires that the party act reasonably and within the other party's expectations in using that discretion. *Id.* at 563. "If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith." *Id.*

*Best* is instructive. *Best* involved a defendant bank charging its customers nonsufficient fund (NSF) fees that were never disclosed, unilaterally increased without notice, and used as an enormous profit center. *See id.* at 561–62. The defendant "had the contractual discretion to set its NSF fees." *Id.* at 564. However, "that discretion had to be exercised within the confines of the reasonable expectations of the depositors." *Id.* The court held that there was "a genuine issue of material fact whether the Bank set its NSF fees in accordance with the reasonable expectations of the parties." *Id.* at 565. The court reached this conclusion, in part, because the NSF fees were not disclosed when customers opened their accounts, and "[t]he sole reference to NSF fees was contained in the account agreement … which obligated them to pay the Bank's 'service charges in effect at any time.'" *Id.* From this, "a trier of fact could infer that the depositors reasonably expected that NSF fees would be special fees to cover the costs of extraordinary services," when in fact they were not. *Id.* A trier of fact could also infer "that the depositors reasonably expected that the Bank's NSF fees would be priced similarly to those checking account fees of which the depositors were aware," when in fact they were not. *Id.* The court concluded that there was evidence that the defendant breached its obligation of good faith by using the NSF fees "to reap … large profits." *Id.* at 566. Accordingly, the court held that the plaintiffs' breach of good faith claim survived summary judgment. *Id.*

Here, Plaintiffs' FAC plainly alleges that Sirius XM failed to act reasonably in exercising its purported discretion under the Customer Agreement to charge a 21.4% U.S. Music Royalty Fee to Plaintiffs and the Class, in numerous ways. FAC ¶ 210–12. Specifically,



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Sirius XM failed to properly disclose the existence or amount of the Fee in its advertisements, which enticed Plaintiffs and the Class to purchase Sirius XM music plans, or at the time of sign-up. FAC ¶¶ 1–2, 33–42, 212. Rather, Sirius XM—at most—lumped the Fee into a generalized category of "Fees and Taxes" without ever mentioning the Fee by name or disclosing the amount of the Fee. FAC ¶¶ 43–55. **This conduct was even more unreasonable, not to mention deceptive, given the fact that Oregon consumers were charged no taxes at all; rather, the undisclosed Fee was the sole and exclusive component of the so-called "Fees and Taxes" category.** FAC ¶¶ 49–52, 212. Plaintiffs' FAC alleges that Sirius XM intentionally took these actions to hide the Fee from its customers.

Sirius XM also used its discretion under the Customer Agreement to charge the undisclosed Fee to Plaintiffs and the Class, and in doing so forced them to pay a monthly fee that was 21.4% higher than Sirius XM's advertised prices. FAC ¶¶ 1, 212.

Sirius XM further hid and prevented Plaintiffs and Class members from learning about the Fee after they signed up for Sirius XM music services. For example, Sirius XM did not send its customers monthly or ongoing billing notices or invoices that identified the Fee. Sirius XM also silently and automatically renewed their subscriptions month after month and year after year without disclosing the Fee. FAC ¶¶ 3, 56–60, 212. This automatic renewal policy frequently resulted in a customer paying, upon renewal, a U.S. Music Royalty Fee that was exponentially higher than the Fee he or she was previously paying, as the amount of the Fee increased along with the monthly subscription price. *See id.*

Even Sirius XM's Customer Agreement—which Sirius XM claims "expressly reserves to Sirius XM the right" to charge the Fee, but in reality only states that Sirius "may charge" (*i.e.*, has discretion to charge) the Fee—fails to either define the Fee or mention the exorbitant amount of the 21.4% Fee. *See* Mot. 28; Customer Agreement, dated Oct. 14, 2021, § F(4) (Stephens Decl., Exhibit 2, p. 7 of 20 (Dkt. 27-2)).

Worse, if a customer noticed the Fee and contacted Sirius XM to inquire about it, Sirius XM would falsely tell the customer that the Fee was "government mandated" and outside of Sirius XM's control. FAC ¶¶ 61–66, 212. Sirius XM's website similarly falsely described the



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Fee as a pass-through government charge from "Congress" that "Sirius XM is required to pay"; even the Fee's name suggests that it is a "U.S." government charge. FAC ¶¶ 64–65, 212. All the while, the Fee was actually an enormous profit center for Sirius XM. FAC ¶¶ 6–7, 32, 66.

Because these factual allegations are more than sufficient to state a claim for breach of the implied duty of good faith and fair dealing on a motion to dismiss, Sirius XM's motion must be denied.

## V. PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS ARE NOT MOOT.

Sirius XM does not contest Plaintiffs' ability or standing to seek public injunctive relief under the UTPA, as the law is clear that Plaintiffs can seek (and recover) both legal and equitable relief under the UTPA. *See* ORS 646.636 ("The court may make such additional orders or judgments … as may be necessary to ensure cessation of unlawful trade practices.").

Instead, Sirius XM argues that Plaintiffs' claims for injunctive relief are moot because (1) California recently amended its Consumers Legal Remedies Act ("CLRA") to require that advertisements now include any and all additional fees, and (2) Sirius XM, in response, "now includes all-in pricing on all advertisements." Mot. 29–30. This argument fails on numerous levels.

***First***, Sirius XM's purported new practice to "now include[] all-in pricing on all advertisements" does not address or even impact the primary allegations of Plaintiffs' FAC: that Sirius XM misrepresents and fails to adequately disclose the existence, substance, and price of the U.S. Music Royalty Fee, not only in its advertisements but also in all dealings with its customers. Thus, even with Sirius XM's alleged revisions to its advertisements, Sirius XM continues to fail to identify the Fee in those advertisements, Sirius XM continues to fail to mention or disclose the existence of the Fee during the telephone sign-up process, and Sirius XM continues to falsely indicate that the Fee is government-mandated and a pass-through charge rather than a profit center, in violation of UTPA (as well as the CLRA).

Further, Sirius XM improperly and inaccurately condenses all of Plaintiffs' claims for injunctive relief into a purported singular request that Sirius XM be "enjoin[ed] … from



**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

advertising or quoting a music plan price" that "does not include all applicable discretionary ongoing service charges."

Sirius XM ignores all the other injunctive relief requested in Plaintiffs' FAC. *See* FAC ¶¶ 201 (also seeking, *inter alia*, "a permanent public injunction" to enjoin Sirius XM from "(1) … falsely advertising the prices of its music plans"; "(3) … representing … that the U.S. Music Royalty Fee or other discretionary service charge is a 'government mandated' charge, a pass-through government charge, a tax, or a charge over which Sirius XM has no control"; and "(4) … representing or stating that the U.S. Music Royalty Fee is a pass-through fee when in fact it is a source of Sirius XM's profits."); *see also* FAC, Prayer for Relief. None of this requested injunctive relief is mooted by Sirius XM's alleged compliance with a recent amendment to the California CLRA.

***Second***, Sirius XM's argument is legally wrong, as it is well established that the voluntary cessation of a challenged conduct "does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019) (citations and internal quotation marks omitted). Voluntary cessation moots a case or claim only if the defendant meets the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Here, Sirius XM has merely produced a declaration that it changed its advertisements to include "all-in pricing." This cannot satisfy Sirius XM's "formidable" burden of proving that it will never revert to its prior practices—particularly with respect to the Class of Oregon residents who are not protected by California law—nor would such a showing be proper at this pre-discovery, motion to dismiss stage. Moreover, Sirius XM's practices *always* violated California law because California's "new" law is actually a clarification of existing law.[14]

---

[14] The California Legislature recognized that the conduct prohibited by the CLRA amendment already "is prohibited by existing statutes." Legislative Notes, Cal. Civil Code § 1770(a)(29); Statutes 2023, chapter 400, § 1(b).



HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Thus, Sirius XM's claim that it *now* intends to comply with California law is belied by its historical practices. The voluntary cessation doctrine demands a much higher burden of proof.

***Third***, this argument is improper because it relies on evidence that is not alleged in Plaintiffs' FAC, and thus may not be considered at this motion to dismiss stage. *See Campanelli,* 100 F.3d at 1479. While this Court could take judicial notice of the California statute, it cannot take judicial notice of Sirius XM's alleged actions or purported compliance therewith. *See United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

Consequently, Sirius XM's motion to dismiss as moot Plaintiffs' request for injunctive relief must be denied.

## CONCLUSION

For the reasons stated, the Court should deny Sirius XM's motion to dismiss or grant Plaintiffs leave to amend.

DATED this 2nd day of May, 2025.

HATTIS & LUKACS

By: */s/ Che Corrington*
Che Corrington, OSB No. 216151
che@hattislaw.com
Daniel M. Hattis (admitted *pro hac vice*)
dan@hattislaw.com
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8628

DENITTIS OSEFCHEN PRINCE, P.C.

Stephen P. DeNittis (*pro hac vice* to be submitted)
sdenittis@denittislaw.com
5 Greentree Centre, Suite 410
525 Route 73 N
Marlton, New Jersey 08057
Telephone: (856) 797-9951

*Attorneys for Plaintiffs*
*and the Proposed Class*